**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PETER PROTOPAPAS** in his capacity as Court-Appointed Receiver and **THE OFFICIAL COMMITTEE OF TALC CLAIMANTS,**<br><br>          Appellants,<br><br>     v.<br><br>**WHITTAKER, CLARK & DANIELS, INC.,**<br><br>          Appellee. | Civil Action No. 23-4151 (ZNQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon Peter Protopapas', in his capacity as a Court Appointed Receiver ("Receiver"), and the Official Committee of Talc Claimants' ("Talc Claimants," together "Appellants") joint filing of an appeal of the District of New Jersey Bankruptcy Court's ("Bankruptcy Court") decision to deny a motion to dismiss a Chapter 11 bankruptcy filed by Whittaker, Clark & Daniels ("WCD" or "Appellee"). (ECF No. 1.)[1]  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court **DISMISSES** Appellants' appeal.

---

[1] This case was consolidated with Docket Number 23-4156 following a joint motion by the parties in this case.  (ECF No. 6.)

## I.     **BACKGROUND AND PROCEDURAL HISTORY**

### A.   **BACKGROUND ON WCD**

WCD was a New York corporation that from 1918 through 2004 supplied "minerals and pigments" to industrial customers.  (WCD Brief ("WCD Br."), ECF No 22 at 15.)[2]  WCD reincorporated in New Jersey in 1972.  (*Id.*)  At its peak, WCD was "one of the largest talc and industrial compound supply and distribution businesses in the United States."  (ECF No. 18-1 at 851; *see also* WCD Br. at 15.)  Brilliant National Services ("Brilliant") purchased WCD's stock in 1988.  (Appellants' Brief ("App. Br."), ECF No. 18 at 18.)  WCD, Brilliant, and affiliate entities L.A. Terminals, Inc. ("LAT") and Soco West, Inc. ("Soco", collectively, "Debtors"), are all owned by Berkshire Hathaway. (App. Br. at 18.)  WCD, LAT, and Soco are direct or indirect subsidiaries of Brilliant.  (*Id.*)

In 2004 the operating assets and intellectual property of WCD and the affiliate entities were sold to Bain Capital under the umbrella of Benntag N.A., at which time WCD "kept tort liabilities involving asbestos and talc."[3]  (WCD Br. at 15; App. Br. at 19.)  WCD, Soco, and Brilliant also retained liability for environmental remediation costs and obligations relating to their, and their predecessors in interest, "production or handling of hazardous materials which contaminated certain properties" as well as specific assets including "asbestos- and environmental-related insurance receivables and certain real estate."  (App. Br. at 19-20.)  In 2004 WCD stopped

---

[2] Throughout this opinion, references to documents from the various bankruptcy court dockets will be cited as: [Applicable District] Bk. Dkt. [No.].  References to the South Carolina action *Sarah J. Plant and Parker Plant v. Avon Products, Inc., et al.*, C/A No. 2022-CP-40-1265 (S.C. C.P.) will be cited, as appropriate, from documents filed either with this Court or with the District of New Jersey Bankruptcy Court.  All references to documents filed with the district court's docket in this case will cite to the document's ECF No. as filed with the district court.  For consistency across the many filings in this case, all page numbers across filing systems will refer to those stamped by the relevant court's e-filing system and not to the internal pagination of the parties, and internal citations will be converted accordingly.

[3] Specifically, WCD, Soco, and Brilliant "retained [] all liability for [] tort claims resulting from exposure to products containing talc, asbestos, or chemical compounds that they (or their predecessors in interest) processed or distributed."  (App. Brief at 19.)

operating commercially, and became what Appellants in this case characterize as "a nonoperating shell entity whose corporate existence has been maintained for the sole purpose of managing legacy asbestos- and talc-related liabilities." (*Id.* at 20.)

In 2007 the Debtors were purchased by National Indemnity Company, an affiliate of Berkshire Hathaway. (*Id.*) Since the purchase, the Debtors have paid out $300 million related to asbestos and environmental claims. (*Id.*) As of Appellants' Petition Date, there were approximately 1,012 asbestos- and talc- related litigation claims pending against WCD, and one environmental-related claim. (*Id.*)

### B. THE SOUTH CAROLINA ACTION

On March 3, 2023 a jury rendered a verdict of over $29 million against WCD in the South Carolina Court of Common Pleas ("South Carolina court") case *Sarah J. Plant and Parker Plant v. Avon Products, Inc.*, *et al.*, C/A No. 2022-CP-40-1265 (S.C. C.P.) related to asbestos exposure in cosmetics leading to mesothelioma. (*Id.*) Following the verdict, plaintiffs in the South Carolina action Sarah J. Plant and Parker Plant (together, "Plant") filed a motion asking the South Carolina court to appoint a receiver for WCD under the South Carolina Code § 15-65-10(4) ("S.C. § 15-65-10(4)"). (*Id.* at 21 (citing ECF No. 18-1 at 91).) S.C. § 15-65-10(4) allows for the appointment of a receiver by a judge of the circuit court in cases where, "a corporation . . . is insolvent or in imminent danger of insolvency . . . and, in like cases, of the property within this state of foreign corporations." S.C. § 15-65-10(4).

Justice Jean Hoefer Toal (ret.), a retired Chief Justice of the Supreme Court of South Carolina who has now been appointed to the trial court bench to oversee South Carolina's asbestos cases, presided over the case. (App. Br. at 21.) Justice Toal granted the motion on an expedited basis on March 10, 2023, finding that based on documents in front of the court, existing jury

verdicts, and the court's knowledge of additional pending litigations against WCD, "WCD appears to actually be insolvent and it is certainly in imminent danger of insolvency." ("Receivership Order", ECF No. 18-1 at 12.) Justice Toal appointed Peter Protopapas as receiver under the statute "pursuant to the South Carolina Law" and conferred the "power and authority [sic] fully administer all assets of WCD, accept service on behalf of WCD, engage counsel on behalf of WCD and take any and all steps necessary to protect the interests of WCD whatever they may be." (*See generally id.* at 8-15.) The Receivership Order specified "the powers of a receiver are as broad as the law permits" and noted "[n]othing in this order is intended to limit the power of the receiver to bring claims against any entity or individual." (*Id.* at 12.) The Receivership Order further enumerated additional rights of the Receiver including collecting accounts receivable from tenants and changing locks to premises at which property was situated. (*Id.* at 13.)

On March 16, 2023, WCD filed a motion for reconsideration of the Receivership Order, asking Justice Toal to vacate the receivership. (App. Br. at 22 (citing ECF No. 18-1 at 111); *see generally* ECF No. 18-1 at 211-222.) During the reconsideration hearing ("Reconsideration Hearing") on April 18, 2023, Plant's counsel argued on the record "to the extent there is a consideration of a bankruptcy filing . . . I just want it in the record for any bankruptcy judge that's looking at this issue that at the present time a receivership is in place" and that during a receivership "the property of [WCD] . . . it's in the property of the Court." (ECF No. 18-1 at 218.) Counsel further urged Justice Toal to agree on the record that once a receivership was in place WCD did not "have the authority to enter a bankruptcy. They don't control [the property]." (*Id.*)

Justice Toal replied on the record that she was "well aware" of the asset situation and "that was the main factor in [her] signing the order so quickly" given she was not clear on WCD's asset picture and wanted to make sure someone "would not simply declare bankruptcy and that entity

would still be controlling things." (*Id.*) In an oral decision, Justice Toal then held that she was "deny[ing] the motion to reconsider and dissolve the receivership" and that she was "satisfied . . . there [were] sufficient connections with South Carolina of the [WCD] assets . . . to justify the receivership." (*Id.* at 220.) Her order did not modify the existing Receivership Order. (*Id.* at 220.) Justice Toal ordered the parties to submit proposed final orders that would be "in some kind of shape for Appellate Courts to review." (App. Br. at 23 (citing ECF No. 18-1 at 221).)

On April 24, 2023, Plant's counsel submitted a proposed order to the South Carolina court, which included language in a footnote that stated "WCD no longer has the rights to administer [the property of the corporation]. This removal of rights includes . . . the ability of the company to institute a bankruptcy proceeding." (WCD Br. at 23 (citing ECF No. 18-1 at 1006 n.12).) WCD's counsel was required to submit their comments on the proposed order to the South Carolina court on April 27, 2023. (App. Br. at 26.)

### C.  THE CHAPTER 11 BANKRUPTCY PETITION

One day before the due date for its submission to the South Carolina court on Plant's proposed Reconsideration Order, WCD and its affiliate debtor entities filed a Chapter 11 bankruptcy in the District of New Jersey. (*Id.*)[4] A newly constituted WCD Board of Directors (the "Filing BOD") approved the filing of the bankruptcy petition. (*Id.*)[5] WCD's bankruptcy docket in the District of New Jersey Bankruptcy Court is number 23-13575.

The Receiver filed a motion to dismiss the bankruptcy action on May 3, 2023 (N.J. Bk. Dkt. 62), followed by an Amended Motion to Dismiss on May 19, 2023 (N.J. Bk. Dkt. 117).

---

[4] Only the WCD bankruptcy is at issue in this appeal.

[5] The Filing BOD was not constituted at the time Justice Toal issued the Receivership Order. Because a different WCD Board of Directors was constituted at the time of the Order, in this Opinion the Court differentiates between the newly the Filing BOD that approved the Chapter 11 Petition and the WCD Board of Directors more generally addressed in Justice Toal's Receivership Order.

Creditors were appointed to the Official Committee of Talc Claimants by the United States Trustee Martha Hildebrandt according to § 1102(a)(1) of the Bankruptcy Code on May 24, 2023.  (N.J. Bk. Dkt. 121.)  The Talc Claimants then joined the Receiver's Amended Motion to Dismiss.  (N.J. Bk. Dkt. 132.)  On June 6, 2023, a hearing on the joint motion took place in front of the Honorable Michael B. Kaplan, C.J.B.C.  (N.J. Bk. Dkt. 175; *see generally* ECF No. 18-1 at 1115-1191.) Appellants' arguments in front of the Bankruptcy Court relied on the Filing BOD's lack of authority to file a Chapter 11 Bankruptcy Petition in light of the Receivership Order, and further argued that the *Rooker-Feldman* doctrine applied, which prohibits federal appellate review of a state court judgment.[6]  (*Id.*)  Following oral argument, the Bankruptcy Court denied the joint Amended Motion to Dismiss, resulting in the order under appeal in the instant action.  (ECF No. 1-2; N.J. Bk. Dkt. 211; *see generally* "Bk. Op.," N.J. Bk. Dkt. 210.)

In an 18-page Letter Opinion filed on June 20, 2023, the Bankruptcy Court held that "WCD's bankruptcy was filed by entities with proper authority" and that "there exists no cause for dismissal."  (Bk. Op. at 4-5.)  Further, the Bankruptcy Court wrote its opinion did not "intend to examine the merits of the South Carolina Court's ruling with respect to the appointment of the Receiver", "revisit[] whether the South Carolina Court had jurisdiction to enter the Receivership Order" or "look[] behind the Receivership Order into the Receiver's motives, experience, or qualifications."  (*Id.* at 3.)  As such, the Bankruptcy Court determined the *Rooker-Feldman* doctrine did not apply since the Bankruptcy Court's ruling was not violative of Justice Toal's order and did not "review[] or reject[] the underlying judgment."  (*Id.* at 5.)

---

[6] The *Rooker-Feldman* doctrine prevents a federal court from exercising jurisdiction where the relief sought by the plaintiff would essentially "reverse a state court decision or void its ruling."  *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006).

Next, the Bankruptcy Court held that the Receivership Order in this case did not remove the WCD Board of Directors' authority to file for bankruptcy.  (*Id.* at 6.)  The Bankruptcy Court relied on the text of the Receivership Order itself, a review of South Carolina laws on the power of receivers, and federal bankruptcy law to determine that the order of appointment of the Receiver did not give him the exclusive authority to file for bankruptcy.  (*Id.* at 7.)  The Bankruptcy Court held that under New Jersey state law, the applicable law for a New Jersey corporation, the Board of Directors was authorized to file for bankruptcy.  (*Id.* at 9.)

The Bankruptcy Court then examined the impact of Justice Toal's statements at the Reconsideration Hearing regarding a potential bankruptcy filing.  (*Id.* at 8.)  However, he found that neither South Carolina law nor the Receivership Order itself vested a receiver with the power to divest the board of a foreign corporation of its power to declare bankruptcy.  (*Id.* at 9.)  The Bankruptcy Court held that Appellants' counsel had a "mistaken understanding of the Receivership Order's effect" and that such an interpretation did not square either with federal bankruptcy law or available authorities. (*Id.* at 10.)  Further, the Bankruptcy Court found that Justice Toal's comments at the Reconsideration Hearing did not amount to either a separate holding or modification of her existing order, and the Bankruptcy Court could not interpret it as supplanting the language of the enacted Receivership Order.  (*Id.* at 12.)

Appellants filed an appeal in the District Court on July 3, 2023 (N.J. Bk. Dkt. 246) concurrently with a Motion for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit (N.J. Bk. Dkt. 248).  Appellees filed an Objection to the Motion for Certification of Direct Appeal (N.J. Bk. Dkt. 289), and Appellants replied (N.J. Bk. Dkt. 314). After a hearing on July, 27, 2023 (N.J. Bk. Dkt. 328) the Bankruptcy Court denied the application for certification to the Third Circuit on July 31, 2023 (N.J. Bk. Dkt. Nos. 331, 337).  The District

Court received the Notice of Appeal from the Bankruptcy Court and the Designation of Bankruptcy record on August 3, 2023.  (ECF Nos. 1 and 2.)  Appellants filed their brief with the District Court on September 12, 2023 (App. Br.), Appellee responded (WCD Br.), and Appellants replied (ECF No. 23).

## II.    LEGAL STANDARD

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees.  28 U.S.C. § 158(a).  A district court reviews a bankruptcy court's "legal determinations de novo, its factual findings for clear error and its exercise of discretion for an abuse thereof."  *In re Rashid*, 210 F.3d 201, 205 (3d Cir. 2000); *see In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995) ("On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . .") (quoting Frmr. Fed. R. Bankr. P. 8013); *see also In re Great Atl. & Pac. Tea Co., Inc.*, Civ. No. 14-4170, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015) (although Fed. R. Bankr. P. 8013 was removed in the new Federal Rules of Bankruptcy Procedure "logic still compels the same conclusion with respect to the appellate powers of the District Court").  When addressing mixed questions of law and fact, the Court divides the questions into their respective components and applies the appropriate standard to each.  *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991).

## III.    DISCUSSION

Section 1112(b) of the Bankruptcy Code provides that bankruptcy actions may be dismissed if the movant establishes cause.  11 U.S.C. § 1112(b)(1).  Appellants contend that WCD's bankruptcy petition was filed by a party with no standing to do so - and as a result,

unauthorized - and therefore should have been properly dismissed under Section 1112(b).  This case comes down to the question of whether the Bankruptcy Court erred in finding there was no cause to dismiss the bankruptcy action.

Appellants in this case argue error on three grounds regarding the bankruptcy court's denial of the motion to dismiss: (1) the Bankruptcy Court "ignor[ed] the plain text of the receivership order and substitut[ed] its own flawed interpretation", (2) the Bankruptcy Court erred by not interpreting the Receivership Order consistently with Justice Toal's on-the-record remarks during the Reconsideration Hearing, and (3) the Bankruptcy Court erred by "relying on its policy preferences" and created an "exception to the rule that state law dictates who may authorize a bankruptcy petition on behalf of a corporate debtor." (App. Br. at 17-18.)  All issues in this appeal are legal issues rather than factual issues, and therefore the Court will review the Bankruptcy Court's legal determinations de novo.

For the reasons below, this Court finds the Bankruptcy Court did not err and affirms its judgment in this case.

## A.   INTERPRETATION OF THE RECEIVERSHIP ORDER

Appellants argue that the Filing BOD lacked authority to petition for bankruptcy on WCD's behalf.  (App. Br. at 33.)  The meat of Appellants' argument is that under South Carolina law Justice Toal divested the WCD Board of Directors of its ability to authorize a bankruptcy.  (*Id.*)  Appellants' position is that "when a state court appoints a general receiver to manage a corporation's affairs, that receiver obtains the sole authority to put the corporation into bankruptcy." (*Id.* at 34 (citing *In re WC 1st & Trinity GP, LLC v. Milligan,* Civ. No. 20-995, 2021 WL 6750934, at *2 (W.D. Tex. Mar. 18, 2021).)  Appellants further argue the text of the

Receivership Order plainly divested the WCD Board of Directors of its power by its terms, and that interpretation otherwise is an error by the Bankruptcy Court.  (*Id.* at 37.)

Appellees argue the opposite: that the Bankruptcy Court made "precisely the right call" when he determined that the only proper place to look to the Receiver's powers was the text of the Receivership Order itself, which was silent on the question of the Board of Directors and power to declare bankruptcy.  (WCD Br. at 14, 50-51.)  The Bankruptcy Court properly determined that "under South Carolina law, the Receiver's power derived solely from the order of appointment," and the plain language of the order of appointment here did not "expressly grant[] the Receiver exclusive authority to file for bankruptcy or otherwise displace[] the [WCD Board of Director's] authority to manage WCD's corporate affairs."  (*Id.* at 25-26.)  Further, because WCD is incorporated in New Jersey, it is a "foreign corporation" under South Carolina law and therefore the Receiver's powers are limited by the enacting receivership statute.  (*Id.* at 29, 63 (citing S.C. Code Ann. § 33-1-400 ("defining 'foreign corporation' as a 'corporation for profit incorporated pursuant to a law other than the law of this State'").)

*1. The Bankruptcy Court's Analysis of the Receivership Order*

This Court finds that the Bankruptcy Court did not err in its analysis of the plain language of the Receivership Order and the powers it conferred under South Carolina law under its enacting statute S.C. § 15-65-10(4).  The Bankruptcy Court appropriately applied South Carolina law and the text of the Receivership Order itself to determine the powers explicitly conferred on the Receiver by Justice Toal's order.  The Bankruptcy Court held that while the case law that exists for receiverships under S.C. § 15-65-10(4) is sparse, such caselaw "clearly establishes that— because a receiver's authority is derived solely from the court . . . —a receiver has no power other than that given him or her by the order of appointment."  (Bk. Op. at 7 (citing *Kirven v. Lawrence,*

244 S.C. 572 (1964); *In re Fifty-Four First Mortg. Bonds*, 15 S.C. 304 (1881)).)  The Bankruptcy Court's review of the Receivership Order found it silent on the question of the WCD Board of Directors and power to declare bankruptcy, and that it only in passing referenced WCD's status as a foreign corporation and how that impacted the enactment of the Receiver's role under South Carolina law.  (*Id.* at 8-9.)

Under South Carolina law, "[a] court order or judgment is construed like any written instrument."  *Campione v. Best*, 435 S.C. 451, 458 (Ct. App. 2021) (citation omitted).  "Whether a court order is clear and unambiguous is a question of law for the court."  *Id.*  Further, "[i]f the language employed is plain and unambiguous, there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used."  *Doe v. Bishop of Charleston*, 407 S.C. 128, 135 (2014) (quoting *Weil v. Weil*, 299 S.C. 84, 90 (Ct. App. 1989)).  The Bankruptcy Court correctly held that absent language or authority in the alternative, the plain language of the Receivership Order did not supplant New Jersey's default rule that the Filing BOD was authorized to file for bankruptcy.  (Bk. Op. at 9.)

The Bankruptcy Court pointed out that while the language of the Receivership Order is broad, it is still enacted "*pursuant to the South Carolina Law*" and expressly included the limiting language that it is "as broad as the law permits" (*Id.* at 6 (citing ECF No. 18-1 at 12) (emphasis added in opinion)).)  The enacting statute in question limits the power of a receiver over a foreign corporation to "the property within this state."  S.C. § 15-65-10(4).  This is intuitive – traditionally, a state court's power is limited to its territorial boundaries.  *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128 (2023) (observing the history of the Anglo-American legal tradition's recognition that "a tribunal's competence was generally constrained only by the 'territorial limits' of the

11

sovereign that created it"); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (noting states are limited "by their status as coequal sovereigns in a federal system").

WCD correctly points out that this is why mechanisms such as ancillary receiverships, in which receivers can apply to secure out of state property from local courts, exist in states including New Jersey and South Carolina.[7]   (App. Br. at 34 (citing *Umland v. United Pub. Serv. Co.*, 111 N.J. Eq. 563, 567 (Ch. 1932) ("[I]t is the customary practice for the receiver to apply to the courts of the state where the property is located for what is ordinarily denominated ancillary receivership.")); *see also* N.J. Stat. Ann. § 14A:14-2 (observing in the 1968 Commissioner's notes on decisions that "[w]hile this section makes no mention of foreign corporations . . . when read in connection with R.S. 14:14-4 and 14:15-2, [they] confer a limited jurisdiction on the New Jersey courts to appoint receivers for the New Jersey property of foreign corporations"); *Farmer v. CAGC Ins. Co.*, 424 S.C. 579, 583 (Ct. App. 2018) (referring to an ancillary receivership in South Carolina relating to a primary receivership established by North Carolina).   If, as Appellants argue, the South Carolina state court receivership automatically reached past the boundaries of the state, there would be no need for such a system.

   *2.   Legal Authorities*

Further, there is little evidence in the case law stemming from S.C. § 15-65-10(4), and Appellants have not provided any, that receiverships under the statute commonly block foreign corporations from declaring bankruptcy or that receivers otherwise enjoy extensive control over foreign corporations.[8]   Although Appellants argue that the Bankruptcy Court did not "seriously

---

[7] There is no evidence in the record showing that the Receiver in this case applied to the New Jersey court for an ancillary receivership.  (WCD Br. at 35.)

[8] There appears to be only one other trial court order citing S.C. § 15-65-10(4) with regard to a foreign corporation, from a case also in front of Justice Toal.  The party in that case made a similar argument to the Appellee's here regarding the limitations of the receivership over foreign corporations.  *See, e.g., Childers v. Davis Mechanical Contractors, Inc.*, Civ. No. 2021-CP-40-03484, 2023 WL 10365071, at *1 (S.C. Com. Pl. Mar. 30, 2023) (in which

engage[] with the Receivership Order's text" and was looking for "magic words," this position is not supported by either the language of the order itself or any caselaw showing South Carolina courts relying on S.C. § 15-65-10(4) to create the type of cross-territorial receiverships endorsed by the Appellants.  (App. Br. at 34, 37.)  More generally, the case law Appellants provide to support their arguments does not persuasively argue otherwise.

Generally, this Court agrees with the Bankruptcy Court that the cases Appellants rely on "for the proposition that the appointment of a receiver automatically displaces a board" are "factually distinguishable and . . . not controlling." (Bk. Op. at 17 n.6.)  Appellants cite *In re WC 1st & Trinity GP, LLC v. Milligan* for the proposition that "a state court can vest authority to file a bankruptcy petition entirely in a receiver."  (App. Br. at 34 (citing *WC 1st*, 2021 WL 6750934, at *2.)  However, several factors distinguish *WC 1st* from the present case.  First, the district court in *WC 1st* examined the effect of a state court receivership order over domestic Texas debtors governed by the Texas Business Organizations Code.  *In re WC1st and Trinity LP*, No. 20-10886, W.D. Tex. Bk. Dkt. 51 ("WC 1st Bk. Op.") at 2 (Bankr. W.D. Tx. Sept. 14, 2020).  Since it is undisputed that WCD is a New Jersey corporation incorporated under the laws of New Jersey, i.e.,

---

Justice Toal's order assumed arguendo that a party's interpretation that S.C. § 15-65-10(4) only applied to its property within South Carolina was correct).  Other court judgments citing the statute do not address the issue.

South Carolina precedent more broadly also pulls against Appellants' contention that the Receivership Order would automatically reach beyond its borders and into the governance of a foreign corporation without any specific language indicating as much.  In *Clark v. Preferred Accident Insurance Company of New York*, the South Carolina Supreme Court wrote that "[e]very State has jurisdiction to determine for itself the liability of property within its territorial limits, to seize and sell such under the process of its Courts."  231 S.C. 167, 175 (1957).  The *Preferred Accident Insurance* court held that in cases where a receiver has been appointed by an out-of-state court, a local receiver could still sequester local property within South Carolina on behalf of local creditors, regardless of the decision by the out-of-state court.  *See Preferred Acc. Ins. Co. of N. Y.*, 231 S.C. at 174–75 ("[T]he local property in a state of a foreign corporation for which [a] receiver . . . has been appointed in another state is subject . . . to sequestration by the appointment of a local receiver [] by the creditors of the corporation, which . . . will take precedence over the rights or title of the [out-of-state] receiver." (citing *Clark v. Williard*, 294 U.S. 211, 214-215).  The *Preferred Accident Insurance* court would be unlikely to hold that a local receiver had precedence over property within the territory over a receiver appointed by an out-of-state court if, as Appellants argue, state court receivers automatically controlled corporations and assets beyond their state borders.  Further, such a position would violate the rights of other states to dispose of the property within their territories discussed elsewhere in the decision.

a foreign corporation under South Carolina law, the comparison here is inapposite. Second, the Texas statute enacting the receivership in question in *WC 1st* is entirely distinct from the South Carolina enacting statute and is, in fact, limited to domestic entities, as evidenced by its title "§ 11.404 Appointment of Receiver to Rehabilitate Domestic Entity." W.D. Tex. Bk. Dkt. 8-13 at 204, 216 (recording the Texas state trial court agreeing at hearing that the receivership was enacted under Texas Business Organizations Code § 11.404). Third, the Receivership Order in *WC 1st* specifically included language that clarified that "[t]he Receiver is granted **the sole and exclusive right to file voluntary petitions** for relief" under the Bankruptcy code. *WC 1st* Bk. Op. at 2 (emphasis in original); *see also* W.D. Tex. Bk. Dkt. 8-2 ¶ 39. Even if the other facts of the cases were not distinguishable, in *WC 1st* the bankruptcy court clearly stated "[h]ere, we have a state court order that gave the Receiver the sole authority to file bankruptcy." (*Id.* at 3.) The Receivership Order at issue in the instant case indisputably does not include explicit language delegating such power. *Compare* Receivership Order, ECF No. 18-1 at 8-15, *with* W.D. Tex. Bk. Dkt. 8-2 ¶ 39. When *WC 1st* is read as a whole, the case supports the Bankruptcy Court's decision to rely squarely on the Receivership Order's plain language and its boundaries within South Carolina law, and provides an example of a receivership order in which a state court clearly gave sole authority to file for bankruptcy to the local receiver.

Appellants' other case on this point, *In re Monroe Heights Development Corporation Inc.*, is also inapposite and unpersuasive. No. 17-10176, 2017 WL 3701857, at *1 (Bankr. W.D. Pa. Aug. 22, 2017); *dismissed*, 573 B.R. 613 (Bankr. W.D. Pa. 2017). The bankruptcy court in *Monroe* found (1) the debtor was a domestic corporation subject to a court order in its home state; (2) the person who filed for bankruptcy was a shareholder rather than the Board of Directors, and under the default Pennsylvania law would not have had authority to file for bankruptcy; and (3) the

Receivership Order itself also clearly specified that no agent of the debtor had authority to commence a bankruptcy proceeding.  2017 WL 3701857, at *1; *see also* Monroe Receivership Order, W.D. Pa. Bk. Dkt. 9-2 at 16.

In the case at hand, the Court agrees with the Bankruptcy Court's assessment that, "[d]espite the Receiver's arguments to the contrary, he is unable to identify any South Carolina state law or language in the Receivership Order that provides for" the WCD Board of Directors to be displaced or divested of its ability to file for bankruptcy.  (Bk. Op. at 17.)  Having reviewed the authorities, this Court reaches the same conclusion on appeal.  The Bankruptcy Court therefore correctly held that absent plain language in the Receivership Order, caselaw, or authorities otherwise, the law of the state of incorporation controls who can properly file a bankruptcy petition.  *Matter of Giggles Restaurant, Inc.*, 103 B.R. 549, 552-54 (Bankr. D.N.J. 1989) (applying New Jersey law for a New Jersey corporation).  The Court affirms the Bankruptcy Court's opinion that under New Jersey state law, the text of the Receivership Order did not change the fact that WCD's Board of Directors held the power to file for bankruptcy and properly did so.

### B.    THE RECONSIDERATION HEARING

Appellants further argue that the Bankruptcy Court should have looked beyond the four corners of the Order and taken into account Justice Toal's comments at the Reconsideration Hearing.  (App. Br. at 39-51.)  Appellants' position is that Justice Toal's comments at the hearing amounted to an official interpretation of her order, and that by not deferring to said interpretation the Bankruptcy Court violated the *Rooker-Feldman* doctrine.  (*Id.* at 47.)  Appellees disagree.

The Court affirms the Bankruptcy Court's holding that Justice Toal's comments at the hearing do not change the limits of the Receivership Order itself and "do[] not constitute a ruling." (Bk. Op. at 12.)  The Receivership Order itself was not ambiguous, and under South Carolina law

there was no room for additional interpretation without ambiguity. *Bishop of Charleston*, 407 S.C. at 135 ("If the language employed is plain and unambiguous, there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used.") (citation omitted).

While courts are "empowered to interpret their orders," it does not necessarily hold that comments made briefly during a related hearing automatically add language or powers to an unambiguous prior order. *Campione*, 435 S.C. at 458. Justice Toal's comments at the Reconsideration Hearing were not, in themselves, an "order" construing her "own previous order," and therefore do not benefit from the same level of "due deference and great weight" as if she had made a holding interpreting her previous order. *Eddins v. Eddins*, 304 S.C. 133, 136 (Ct. App. 1991); *see also* ECF No. 18-1 at 219-220 (recording Justice Toal's statements that she was "simply hearing these motions about whether to reconsider and whether to vacate" the Receivership Motion and that the holding was that she was "going to deny the motion to reconsider and to dissolve the receivership.") The Bankruptcy Court was correct to refuse to "read further into any colloquy undertaken in the context of the Reconsideration Motion" and to focus instead on the textual interpretation of the unambiguous Receivership Order and its contextual legal framework. (Bk. Op. at 12) (emphasis removed).

Further, because Justice Toal's commentary is not in itself a holding, the Bankruptcy Court's decision not to rely on it cannot be violative of the *Rooker-Feldman* doctrine, which only applies to federal review of state court orders.[9]

---

[9] Given that the Court has affirmed the Bankruptcy Court's decision that the Filing BOD had the proper authority to file for WCD's bankruptcy, it does not reach Appellants' argument regarding what they called the Bankruptcy Court's "secondary holding" and any alleged exception to the default bankruptcy rules.

**IV.**  <u>**CONCLUSION**</u>

For the reasons stated above, the Court will affirm the decision of the Bankruptcy Court and will **DISMISS** this appeal.  An appropriate Order will follow.


Date: **May 31, 2024**

<div align="center" style="margin-left:50%">

<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

</div>